UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOHAMMED ADNAN BHUTTA,

        Plaintiff,

                            Case No.: 05-CV-70433-DT

vs.

                            HON. NANCY G. EDMUNDS
                            MAG. JUDGE WALLACE CAPEL, JR.

GEORGE W. BUSH, et. al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

## I.    **INTRODUCTION**

Before the Court are the following motions:  Defendant City of Flint's Motion to Dismiss pursuant to FRCP 12(b)(6);[1] Defendant Judge Richard Hughes' (hereinafter "Defendant Judge Hughes") Motion to Dismiss pursuant to FRCP 12(b)(6);[2] Federal Defendants' President George W. Bush, FBI, Director of the FBI, Special Agent Francine Gross (hereinafter "Defendant Gross"), FBI John Doe, FBI Jane Doe, Department of Justice, and Attorney General John Ashcroft (hereinafter "Federal Defendants") Motion to Dismiss pursuant to FRCP 12(b)(1) and 12(b)(6), or in the

---

[1]Defendant City of Flint's "Motion to Dismiss with supporting Brief and Certificate of Service," filed August 12, 2005 (hereinafter "City of Flint's Brief").

[2]"Judge Richard L. Hughes' Motion to Dismiss [and] Brief in Support," filed August 17, 2005 (hereinafter "Defendant Judge Hughes' Brief").

alternative for Summary Judgment;[3] and Defendant Carol J. Erway's (hereinafter "Defendant Erway"), Motion to Dismiss pursuant to FRCP 12(b)(6).[4]

## II.    FACTS AND PROCEDURAL HISTORY

On January 20, 2005, Plaintiff, acting pro se, filed a complaint (hereinafter "Plaintiff's Complaint"),[5] in the Eastern District of New York, pursuant to 42 U.S.C. § 1983, and alleged that his civil rights were violated when he was arrested and incarcerated in Flint, Michigan.  Federal Defendants assert the following facts leading up to this case:

> Plaintiff Mohammed Adnan Bhutta is a native of Pakistan and a naturalized citizen of this country. Exh A at ¶¶ 5, 13.  He entered into an arranged marriage with Sajida Afridi on or about August 7, 2001 in New York, New York. Id. at ¶ 5.  After Afridi returned to Flint, Michigan to continue her education at Baker College, she received threats of physical harm from plaintiff, and on October 11, 2001, she obtained a personal protection order (PPO) against him. Id. at ¶ 6.
>
> On October 15, 2001, the FBI commenced an investigation of plaintiff on the basis of a report from the Director of Campus Security at Baker College in Flint, Michigan, that Afridi was receiving threats of physical harm from plaintiff via telephone, and that there was a concern that plaintiff was involved in obtaining false documents and possibly involved in terrorist activities. Id. at ¶ 4.  The investigation subsequently was discontinued for failure to corroborate the allegations of possible terrorist activity.  Id. at ¶ 7.
>
> On November 2, 2001, a Genesee County, Michigan, felony warrant for plaintiff was issued on a charge of aggravated stalking, based on complaints by Afridi that plaintiff had repeatedly violated the PPO.  Id. at ¶ 9.  Plaintiff was arrested by Flint Township Police Department officers on November 11, 2001 at a Flint area Burger King. Id. at ¶ 10.  He waived preliminary examination, and on

---

[3]"Federal Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment [and] Brief in Support," filed August 23, 2005 (hereinafter "Federal Defendants' Brief").

[4]"Defendant Carol Erway's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) [and] Brief in Support," filed September 21, 2005 (hereinafter "Defendant Erway's Brief").

[5]Plaintiff's Complaint at "Page 1." Plaintiff did not number the pages of his Complaint. The undersigned will refer, as noted above,  to the page numbers in quotation marks, beginning with page one on the document entitled "Complaint," within documents contained in Docket Entry No. 1.

December 3, 2001, plaintiff pled guilty to a reduced charge of posting threats over the internet. Id. at ¶ 11. On December 5, 2001, plaintiff was released from jail on a personal recognizance bond with a voice tether, pending sentencing. Id. at ¶ 12. On January 16, 2002, the court ordered plaintiff to produce documentation of his medical degree before the court would pass final judgment on sentencing, and plaintiff was remanded to the custody of Genesee County Jail until January 30, 2002. Id. at ¶ 14.

On January 30, 2002, the court sentenced plaintiff to five years' probation. Id. at ¶ 15; Exh B. He also was ordered to serve nine months in the Genesee County Jail, but the court authorized placement on Voice Track and permitted Bhutta to return to New York. Id.

On March 3, 2002, plaintiff filed a complaint with the Post-Terrorism Discrimination Working Group, alleging that he had been harassed and assaulted by FTPD officers during his arrest on November 11, 2001, and that he was subjected to inhumane treatment, including solitary confinement, while detained at the Genesee County Jail. Id. at ¶ 8. On September 3, 2002, the Office of the United States Attorney General, Criminal Section/Civil Rights Division, requested that a preliminary investigation be conducted into plaintiff's claims of civil rights violations. Id. That investigation revealed that plaintiff's November 11, 2001 arrest was effected without incident, and that he made no complaints of assault or injury at that time. Id. at ¶ 16. Likewise, his detention at Genesee County Jail was without incident; no disciplinary action was taken against plaintiff during his incarceration, nor was he ever placed in solitary confinement. Id. at ¶ 17. The FBI's preliminary investigation of alleged civil rights violations was closed due to failure to corroborate the allegations of civil rights violations made by plaintiff. Id. at ¶ 18.[6]

Plaintiff does not dispute these facts directly; rather, he alleges that after an attack on the World Trade Center on September 11, 2001, he was arrested by the FBI while at a Burger King restaurant in Flint, Michigan.[7] He further alleges that he legally changed his name from Mohammed Yaqub, which was a named listed on the FBI's most wanted list, to Mohammed Adnan Bhuttu in 1991.[8] The Complaint alleges abuse during the arrest, incarceration, and during court

[6]Federal Defendants' Brief at pages 1-3.

[7]Plaintiff's Complaint at "pages 2-5."

[8]Plaintiff's Complaint at "pages 2-3."

3

appearances.[9]  He further asserts that he was forced to plead guilty.[10]  Plaintiff alleged that "[a]ll [c]harges of terrorism [a]ctivity" had been dropped.[11]  The Complaint requests the dismissal of all remaining charges, the return of all Plaintiff's confiscated property, money damages in the amount of $165 trillion, and permission to travel to Pakistan.[12]

On February 4, 2005, the case was transferred to the Eastern District of Michigan, pursuant to 28 U.S.C. §§ 1391(b), 1406(a).[13]  On April 15, 2005, all claims against Burger King as well as all state law claims were dismissed pursuant to an Order issued by the Honorable Nancy G. Edmunds.[14]

On July 28, 2005, Plaintiff was ordered to show cause as to why his "case should not be dismissed for failure to prosecute," pursuant to Rule 41.2, Local Rules, United States District Court for the Eastern District of Michigan.[15]  Plaintiff satisfied the Order to Show Cause and Judge Edmunds entered an Order according to same.[16]

---

[9]Plaintiff's Complaint at "pages 3-5."

[10]Plaintiff's "Answer to Judge Richard L. Hughes' Motion to Dismiss," filed October 12, 2005 (hereinafter "Plaintiff's Answer to Defendant Judge Hughes"), at "page 2."

[11]Plaintiff's Complaint at "page 4."

[12]Plaintiff's Complaint at "pages 5-6."

[13]See [Docket Entry No. 1].

[14]See [Docket Entry No. 2].

[15]See [Docket Entry No. 3].

[16]See [Docket Entry Nos. 4, 5, and 7].

4

On August 12, 2005, Defendant City of Flint filed a Motion to Dismiss pursuant to FRCP 12(b)(6).[17]  On August 17, 2005, Defendant Judge Richard Hughes, (hereinafter "Defendant Judge Hughes"), filed a Motion to Dismiss pursuant to FRCP 12(b)(6).[18]  On August 23, 2005, Federal Defendants President George W. Bush, FBI, Director of the FBI, Special Agent Francine Gross, FBI John Doe, FBI Jane Doe, Department of Justice, and Attorney General John Ashcroft (hereinafter "Federal Defendants"), filed a Motion to Dismiss pursuant to FRCP 12(b)(1) and 12(b)(6), or in the alternative for Summary Judgment.[19]  On September 21, 2005, Defendant Carol J. Erway (hereinafter "Defendant Erway") filed a Motion to Dismiss pursuant to FRCP 12(b)(6).[20]

On October 12, 2005, Plaintiff filed an Answer to Defendant Judge Hughes' Motion to Dismiss (hereinafter "Plaintiff's Answer to Defendant Judge Hughes").[21]  On December 9, 2005, Plaintiff filed an Answer to Defendant City of Flint's Motion to Dismiss (hereinafter "Plaintiff's Answer to Defendant City of Flint").[22]  On December 9, 2005, Plaintiff filed an Answer to Federal Defendants' Motion to Dismiss, or in the alternative for Summary Judgment (hereinafter "Plaintiff's Answer to Federal Defendants").[23]  On December 9, 2005, Plaintiff filed an Answer to Defendant

---

[17]See [Docket Entry No. 8].

[18]See [Docket Entry No. 9].

[19]See [Docket Entry No. 12].

[20]See [Docket Entry No. 14].

[21]See [Docket Entry No. 17].

[22]See [Docket Entry No. 19].

[23]See [Docket Entry No. 21].

Erway's Motion to Dismiss (hereinafter "Plaintiff's Answer to Defendant Erway").[24]  Plaintiff also filed a Motion for Permission to travel to Michigan on that same date, which was denied by the undersigned on December 15, 2005.[25]

## III.    STANDARD OF REVIEW

### A.    Motion to Dismiss

The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint. When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true.  Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974).  Dismissal pursuant to a Rule 12(b)(6) motion is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998).

It must be mentioned that pro se complaints are to be construed liberally; however, a court is not required to accept a plaintiff's summary allegations or unwarranted legal conclusions in ruling on a motion to dismiss.  Lillard v. Shelby County Bd. Of Educ., 76 F.3d 716, 726 (6th Cir. 1996). A complaint will not survive a Rule 12(b)(6) challenge unless it contains either direct or inferential allegations respecting all of the material elements necessary to sustain a recovery under a viable legal theory.  Uttilla v. City of Memphis, 40 F.Supp.2d 968, 970 (W.D. Tenn. 1999) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).  Lastly, the court is

---

[24]See [Docket Entry No. 22].

[25]See [Docket Entry Nos. 20 and 23].

6

prohibited from acting as an advocate for pro se litigants. Berridge v. Heiser, 993 F.Supp. 1136, 1141 (S.D. Ohio 1997) (citing Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

Fed.R.Civ.P. 12(b)(6) states, "If on a motion [for judgment on the pleading] matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . ."

## B.    Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." In essence, Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. Bender v. Southland Corp., 749 F.2d 1205, 1210-1211 (6th Cir. 1984). However, the Court is not permitted to judge the evidence or make findings of fact. Ivy Street Corporation v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. This burden may be discharged by showing there is an absence of evidence to support the nonmoving party's case. Celotex Corp., 477 U.S. at 325. Once the moving party discharges this burden, it then shifts to the nonmoving party to present specific facts showing a genuine triable

issue.  Fed.R.Civ.P. 56(e).  To create a genuine issue of material fact, the nonmoving party must

produce evidence sufficient to require submission of the issue to a jury.

IV.    **DISCUSSION**[26]

    A.    **City of Flint**

The City of Flint argues that Plaintiff has not stated a cognizable claim against it; thus,

Plaintiff's Complaint against the City of Flint should be dismissed pursuant to FRCP 12(b)(6).  The

City of Flint argues that all the events occurred outside the corporate boundaries of the City of Flint

and that no agents of the City were involved.  Plaintiff alleges in his Complaint that "Defendant, city

[sic] of Flint is also being sued for violating my human rights and constitutional rights," and

reiterates same in his response to Defendant City of Flint's Motion.[27]

---

[26]The undersigned notes that Defendants fail to raise a challenge to Plaintiff's Complaint pursuant to Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994).  However, Plaintiff's Complaint clearly implies that his sentence is invalid in requesting, "[d]ismissal of all the charges brought upon him, due to the fact that he is innocent."  Plaintiff's Complaint at "page 5."  In Cummings v. City of Akron, 418 F.3d 676, 681 (6th Cir. 2005), the Sixth Circuit discussed the issue of whether such a defense should be raised *sua sponte*.  The Court noted,

> Defendants did not raise Heck in their motion for summary judgment. We have not explicitly held whether Heck constitutes an affirmative defense, although at least one of our sister circuits has found that defendants may waive Heck arguments by failing to make them before the district court.  See Kramer v. Village of North Fond du Lac, 384 F.3d 856, 862 (7th Cir.2004); but see Manthey v. Kessler, 79 Fed.Appx. 153, 153-54 (6th Cir. 2003) (unpublished decision) (affirming without analysis district court's sua sponte finding that Heck barred the plaintiff's claims); Gil v. City of New York, 32 Fed.Appx. 615, 616 (2d Cir.2002) (unpublished decision) (same). In any event, Plaintiff has not argued on appeal that Heck constitutes an affirmative defense; thus it is unnecessary for this Court to make any such finding.

The Court then went on to discuss Heck's application to the facts.  However, the undersigned finds that the defenses that are in fact raised by the Defendants here, should nevertheless result in dismissal; therefore, the undersigned will not discuss a further application of Heck to the present facts.

[27]Plaintiff's Complaint at "page 5;" Plaintiff's Answer to Defendant City of Flint.

> [T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.

Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978).

Further,

> In order to establish a municipality's liability for the civil-rights violations of its agents, a plaintiff must "allege sufficient facts to demonstrate the existence of a particular policy, practice or custom which directly caused the" harm. Moreno v. Metropolitan Gen. Hosp., No. 99-5205, 2000 WL 353537, at *3 (6th Cir. Mar.28, 2000). In this case, the Court apprehends no evidence to which Plaintiff Cross pointed in his response or in citations to the record that would show that Defendant Ecorse had a deliberate custom, policy, or practice that led to any of Plaintiff Cross's alleged harms. The Court thus grants summary judgment in favor of Defendant Ecorse as to all claims.

Johnson v. City of Ecorse, 137 F.Supp.2d 886, 890 (E.D.Mich. 2001).[28]

However, Plaintiff only alleges that the City of Flint is responsible because the alleged torture occurred at the "Genesee County Jail, [which] is located in the middle of the City of Flint."[29] "A plaintiff must set forth facts showing the existence of an offending custom or policy and mere conclusory allegations are insufficient." Barrett v. Wallace, 107 F.Supp.2d 949, 955 (S.D.Ohio 2000) (citations omitted). As the City of Flint argues, "the Genesee County jail is operated and

---

[28]The undersigned recognizes "district judges in this circuit must not treat decisions by other district judges, in this and a fortiori in other circuits, as controlling, unless of course the doctrine of res judicata or of collateral estoppel applies. Such decisions will normally be entitled to no more weight than their intrinsic persuasiveness merits." TMF Tool Co., Inc. v. Muller, 913 F.2d 1185, 1191 (7th Cir. 1990) (quoting Colby v. J.C. Penney Co., Inc., 811 F.2d 1119, 1124 (7th Cir.1987) (emphasis in original)). See also Liebisch v. Sec'y of Health and Human Servs., 21 F.3d 428, 1994 WL 108957, *2 (6th Cir. Ohio 1994) ("District Court opinions have persuasive value only and are not binding as a matter of law.") (unpublished disposition; Table).

[29]Plaintiff's Answer to Defendant City of Flint.

controlled by Genesee County, another separate government entity, not by the City of Flint."[30]
Plaintiff fails to show any injury caused by an unconstitutional established practice, policy, or
custom of the City of Flint.  Monell, 436 U.S. at 694, 98 S.Ct. 2018.

Further, although we are dealing with a pro se plaintiff, it is worth repeating that a court is
not required to accept a plaintiff's conclusory allegations or unwarranted legal conclusions when
ruling on a motion to dismiss.  Lillard, 76 F.3d at 726.  Thus, "although the Sixth Circuit does not
require a heightened pleading standard for a § 1983 claim, '[a] complete failure to plead a policy or
custom would result in dismissal.'" Laise v. City of Utica, 970 F. Supp. 605, 608 (E.D. Mich. 1997)
(quoting Fluellen v. U.S. Department of Justice Drug Enforcement Admin., 816 F.Supp. 1206, 1215
(E.D. Mich. 1993) (citing Foster v. Walsh, 864 F.2d 416, 419 (6th Cir.1988))).  Thus, Plaintiff fails
to state a claim against the City of Flint.

## B.    Defendant Judge Hughes

Defendant Judge Hughes argues that as a 67th District Court Judge within the State of
Michigan, he is entitled to absolute judicial immunity.[31]  Further, he argues that even if he was not
entitled to such immunity, Plaintiff is barred by the applicable statute of limitations.[32]

Defendant Judge Hughes is correct in his assertion of absolute judicial immunity.  As he
points out:[33]

> "Judges of courts of superior or general jurisdiction are not liable to civil actions for
> their judicial acts, even when such acts are in excess of their jurisdiction, and are

[30]City of Flint's Brief at page 2.

[31]Defendant Judge Hughes' Motion at pages 1-2.

[32]Defendant Judge Hughes' Motion at pages 1-2.

[33]Defendant Judge Hughes' Brief at page 5.

alleged to have been done maliciously or corruptly." Bradley v. Fisher, 80 U.S (13 Wall.) 335, 351, 20 L.Ed. 646 (1871). This immunity applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights. See Pierson v. Ray, 386 U.S. 547, 554-55, 18 L.Ed.2d 288, 87 S.Ct. 1213 (1967). The Supreme Court explained: "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication. . . . Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-affects inevitably associated with exposing judges to personal liability." Forrester v. White, 484 U.S. 219, 226-27, 98 L.Ed.2d 555, 108 S.Ct. 538 (1988).

Stern v. Mascio, 262 F.3d 600, 606 (6th Cir. 2001). Plaintiff's allegations against Defendant Judge Hughes relating to his actions as a judicial officer are entitled to immunity under Pierson and its progeny.

Further, even if Defendant Judge Hughes acted outside his judicial authority, Plaintiff's claim is barred by the applicable statute of limitations. Plaintiff was arrested in November 2001[34] and was last detained up until January 30, 2002.[35] Plaintiff's Complaint alleges injuries suffered as a result of that detention.[36] Plaintiff filed his Complaint on January 20, 2005, in the Eastern District of New York. He alleges in his Compliant that his claims arise out of that arrest and detention.[37]

The general rule is that federal courts apply state personal injury statutes of limitations to claims brought under § 1983. See Wilson v. Garcia, 471 U.S. 261, 276, 105 S.Ct. 1938 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. See Mich.

---

[34]Federal Defendant's Brief, Exhibit A at page 3; Plaintiff's Answer to Federal Defendants.

[35]Federal Defendant's Brief, Exhibit A at page 3; Exhibit B.

[36]Plaintiff's Complaint at "pages 3-5."

[37]Plaintiff's Complaint at "pages 3-5."

Comp. Laws, § 600.5805(10); Carroll v. Wilkerson, 782 F.2d 44, 45 (6th Cir. 1986).  The statute of limitations for personal injury actions in Michigan is also three years.  See Mich. Comp. Laws, § 600.5805(9).  The statute of limitations period begins to rule when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred.  See Friedman v. Estate of Presser, 929 F.2d 1151, 1159 (6th Cir. 1991).

The reason that Plaintiff's claim is barred by the statute of limitations is because he does not argue that any of Judge Hughes' actions were outside the scope of his authority within the time allowed by the statute of limitations.  Although he was detained by Judge Hughes within the time allowed by the statute of limitations, because he failed to present documentation of his medical degree on January 16, 2002, this is not outside the scope of the authority granted to Judge Hughes.[38]

Nevertheless, Plaintiff alleges that Defendant Judge Hughes forced him to plead guilty, which would obviously be outside his judicial authority.[39]  However, Plaintiff plead guilty on December 3, 2001;[40] and, again, the statute of limitations period begins to rule when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred.[41]  See Friedman, 929 F.2d at 1159. Therefore, Plaintiff knew when he was allegedly forced to plead guilty

---

[38]Plaintiff's Complaint at "page 5."

[39]Plaintiff's Complaint at "page 5."

[40]Federal Defendant's Brief, Exhibit A at page 3.

[41]The undersigned is aware of the recent decision in Wolfe v. Perry, 412 F.3d 707, 715 (6th Cir. 2005), in which the Sixth Circuit reversed the district court's statute of limitations analysis in terms of Fourth Amendment and malicious-prosecution claims.  However, that case can be distinguished because the present case deals with an alleged coerced plea which would have been known at the time.  In Wolfe, the criminal charges were dismissed prior to the filing of the Section 1983 action.  Id. at 714-15.

that there was a basis for his injury and the statute of limitations began to run at that time.  Id.  Thus, his claim is barred.

### C.    Federal Defendants

The Federal Defendants argue that all of the claims against them are barred by sovereign immunity.[42]  Additionally, they argue that all claims against President Bush are barred by absolute immunity.[43]  Further, it is argued that any claims brought against the Director of the FBI, Defendant Gross, and Attorney General Ashcroft, in their individual capacities are barred by the statute of limitations.[44]  Further, it is argued that the Director of the FBI, Defendant Gross, and Attorney General Ashcroft, if sued in their individual capacities are entitled to qualified immunity.[45]  The Federal Defendants also argue that Plaintiff's tort claims are barred by sovereign immunity; thus, they must be dismissed.[46]  It is further argued that the Complaint should be dismissed for insufficient service of process.[47]  Lastly, the Federal Defendants argue that in the alternative they should be granted summary judgment because no genuine issue of material facts exists.[48]  Plaintiff argues that the Federal Defendants are "war criminals."[49]

---

[42]Federal Defendants' Brief at pages 5-7.

[43]Federal Defendants' Brief at pages 7-8.

[44]Federal Defendants' Brief at pages 8-9.

[45]Federal Defendants' Brief at pages 9-12.

[46]Federal Defendants' Brief at pages 13-14.

[47]Federal Defendants' Brief at page 14.

[48]Federal Defendants' Brief at page 15.

[49]Plaintiff's Answer to Federal Defendants.

Plaintiff brought this suit pursuant to 42 U.S.C. § 1983.  To state a viable claim under § 1983, a plaintiff must produce evidence that they were deprived of a right, privilege, or immunity secured by the federal Constitution or law of the United States, and that the deprivation was caused by a person acting under color of state law.  See Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120, 112 S.Ct. 1061 (1992).  Plaintiff cannot maintain a § 1983 claim against the Federal Defendants U.S. Department of Justice and FBI because their employees' actions were not taken under color of state laws.

### 1.     U.S. Department of Justice and FBI

As the Federal Defendants point out, it appears that Plaintiff is attempting "to bring suit against the federal defendants for alleged constitutional violations under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397, [91 S.Ct. 1999] (1971)."[50]  In Bivens,  the Supreme Court created a cause of action against federal officers who, while acting under color of federal law, violate a citizen's constitutional rights.  Id.  Plaintiff  is suing, in part, the actual federal agencies of the U.S. Department of Justice and the FBI.  In Federal Deposit Insurance Corporation v. Meyer, 510 U.S. 471, 114 S.Ct. 996 (1994), the Supreme Court held that a Bivens action cannot be brought against a federal agency.  Plaintiff's Complaint against the U.S. Department of Justice and the FBI, therefore should be dismissed.

### 2.     Individually Named Federal Defendants

First, all of the individual federal actors are "facially exempt" under § 1983, as the Court held in District of Columbia v. Carter,  409 U.S. 418, 424-25, 93 S.Ct. 602, 606 (1973) (footnotes omitted),

---

[50]Federal Defendants' Brief at page 5.

[l]ike the Amendment upon which it based, [Section] 1983 is of only limited scope. The statute deals only with those deprivations of rights that are accomplished under the color of the law of "any State or Territory." It does not reach purely private conduct and, with the exception of the Territories, actions of the Federal Government and its officers are at least facially exempt from its proscriptions.

Additionally, the Federal Defendants point out that Plaintiff has not made clear that he is suing any of the Federal Defendants in their individual capacities and that "[a]bsent a clear notification that defendants are being sued in their individual capacities, courts must assume that they are being sued in their official capacities, only."[51] The Federal Defendants argue further that Plaintiff's Complaint implies that he is only suing the individuals in their official capacities because he refers to the Director of the FBI by title only, and the other individuals are named with their official titles in front of their names, i.e., President George W. Bush, FBI Special Agent Francine Gross, and Attorney General John Ashcroft.[52] Further, Plaintiff's allegations relate to actions by the individuals within their official capacities.[53] Nevertheless, the claims against President Bush, Defendant Gross, and Attorney General John Ashcroft will be discussed separately below.

### a.    President Bush

Specifically, as it relates to President Bush, Plaintiff argues that in signing the Patriot Act, the President authorized Plaintiff's torture.[54] The signing of the Patriot Act was obviously within the President's official duties; therefore, it was not meant to authorize torture, and as such it is

---

[51]Federal Defendants' Brief at page 6 (quoting United States ex rel. Diop v. Wayne Co. Comm. College Dist., 242 F.Supp.2d 497, 2003 WL 251055 at *14 (E.D. Mich. Jan. 31, 2003), citing Whittington v. Milby, 928 F.2d 188, 193 (6th Cir.), cert. denied 502 U.S. 883 (1991); Wells, 891 F.2d at 594).

[52]Federal Defendants' Brief at pages 6-7.

[53]Federal Defendants' Brief at page 7.

[54]Federal Defendants' Brief at pages 7-8.

entitled to sovereign immunity.  Further, as Defendants point out,[55] President Bush, as "President of the United States, 'is entitled to *absolute* immunity from damages liability predicated on his official acts.'"  Nixon v. Fitzgerald, 457 U.S. 731, 749, 102 S.Ct. 2690, 2701 (1982) (emphasis added).

### b.    Defendant Gross

Defendant Gross in her "personal capacity may be subject to liability under § 1983 if [s]he acted in concert with state officials.  However, in an official-capacity suit, [a federal agent] would be entitled to sovereign immunity since the suit is against the entity.  Dismissal of the § 1983 claim against [the] agent acting in an official capacity must be granted because of sovereign immunity." Fluellen v. U.S. Dept. of Justice Drug Enforcement Admin., 816 F.Supp. 1206, 1214 (E.D.Mich. 1993).  However, Defendant gross signed a declaration stating that she "[has] never met, nor spoken with, Mohammed Adnan Bhutta."[56]

At the very least, Defendant Gross would be entitled to qualified immunity.

If a defendant raises qualified immunity, the defendant bears the initial burden of coming forward with facts to suggest that he or she was acting within the scope of discretionary authority.  Wegener v. City of Covington, 933 F.2d 390, 392 (6th Cir. 1991). However, once qualified immunity has been raised, the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity.  Id.  To do so, a plaintiff must prove:  (1) that the facts as alleged by him show a violation of a constitutional right; and (2) that such right was clearly established.

Smith v. Michigan, 256 F.Supp.2d 704, 710 (E.D.Mich. 2003) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)).  Defendant Gross has raised the defense of qualified immunity and has stated that although she investigated a complaint against Plaintiff, she has never had any contact

---

[55]Federal Defendants' Brief at pages 7-8.

[56]Federal Defendant's Brief, Exhibit A at page 4.

with him.[57]   Plaintiff asserts that Defendant Gross is somehow "directly responsible for [his] torture;"[58] thus, the question becomes whether these allegations are sufficient to meet the burden that has now shifted to the Plaintiff.

Plaintiff fails to meet his burden.   He fails to show that there are (1) facts that show a violation of a constitutional right; and (2) that such right was clearly established.   See Saucier, 533 U.S. at 201.   As Defendants point out,

> Plaintiff has not identified a specific constitutional right allegedly violated by the individual federal defendants, nor, aside from his false allegations of abuse and "torture" by federal agents, has he alleged facts in support of a claim of violation of a constitutional right. He simply states in conclusory fashion that his constitutional rights have been violated.[59]

Thus, there are "no facts" alleged by Plaintiff, other than his conclusory statements, for the undersigned to examine in determine violation of a clearly established right.   Thus, Defendant Gross should be entitled to qualified immunity.

### c.      Attorney General John Ashcroft

Attorney General John Ashcroft also raises the defense of qualified immunity under the aforementioned law.   See Saucier, 533 U.S. at 201.   Plaintiff argues in his Complaint that "Attorney General Mr. John Ashcroft is being sued for authorizing my torture in the jail during my detention and violation of my human rights, constitutional rights, and civil rights."[60]   In response to the Federal

---

[57]Federal Defendants' Brief at pages 9-12; Federal Defendants' Brief, Exhibit A at page 4. It is noted that the other Federal Defendants' claims are subject to dismissal; therefore, the issue of qualified immunity will not be discussed further.

[58]Plaintiff's Answer to Federal Defendants at "page 3."

[59]Federal Defendants' Brief at pages 11-12.

[60]Plaintiff's Complaint at "page 3."

17

Defendants' defense, Plaintiff does not allege any specific facts relating to Attorney General John Ashcroft, other than collectively referring to him as a "war criminal."[61] Thus, again, there are "no facts" alleged by Plaintiff, other than his conclusory statements for the undersigned to examine in determining violation of a clearly established right. Thus, Attorney General John Ashcroft should be entitled to qualified immunity.

### d.    Statute of Limitations

Further, the Federal Defendants argue that Plaintiff's claim is barred by the statute of limitations regardless of the aforementioned immunity.[62] Although the undersigned finds that the Federal Defendants' claims should be dismissed for other reasons, same is compelled to set forth the following statute of limitations analysis.

Plaintiff was arrested in November 2001,[63] and was last detained up until January 30, 2002.[64] Plaintiff's Complaint alleges injuries suffered as a result of that detention.[65] Plaintiff filed his Complaint on January 20, 2005, in the Eastern District of New York.[66]

Again, the applicable statute of limitations for civil rights suits is three years. See Mich. Comp. Laws, § 600.5805(10); Carroll v. Wilkerson, 782 F.2d 44, 45 (6th Cir. 1986). The statute of limitations for personal injury actions in Michigan is also three years. See Mich. Comp. Laws,

---

[61]Plaintiff's Answer to Federal Defendants at "pages 1-2."

[62]Federal Defendants' Brief at page 6.

[63]Federal Defendants' Brief, Exhibit A at page 3; Plaintiff's Answer to Federal Defendants.

[64]Federal Defendants' Brief, Exhibit A at page 3.

[65]Plaintiff's Complaint at "pages 3-5."

[66]Plaintiff's Complaint at "page 1."

600.5805(9). The statute of limitations period begins to rule when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred. See Friedman, 929 F.2d at 1159.[67]

The problem with the Federal Defendants' argument in this regard is that Plaintiff alleges claims arising out of his arrest and detention which continued until January 30, 2002.[68] Specifically, he alleges that Defendant Gross "is directly responsible for my torture until my release on January 30, 2002."[69] Further, he argues that Attorney General John Ashcroft authorized torture and violation of his human and constitutional rights during his detention.[70]

The Federal Defendants argue that

plaintiff alleges, on January 16, 2002, the state court judge ordered plaintiff to produce evidence of his medical degree, and remanded plaintiff to the custody of the Genesee County Jail until his sentencing was completed on January 30, 2002. Complaint at ¶ 22; Exh A at ¶ 14. Plaintiff alleges that the judge caused him to be mistreated during this period of incarceration because he "was attempting to force

---

[67]Although the Federal Defendants fail to mention the proper statue of limitations for the defamation claim against Defendant Gross, such a claim would be "time-barred by Michigan's one year statute of limitations for defamation set forth in M.C.L.A. § 600.5805(7)." Volker v. Detroit Edison Co., 879 F.Supp. 67, 69 (E.D.Mich. 1994). Further, "Plaintiff has raised no triable questions of fact which are material to the defendant's arguments relative to the bar of the statutes of limitation. Thus, defendant is entitled to summary judgment in its favor." Id. However, the statute of limitations regarding defamation was not raised by the Federal Defendants and would therefore be waived. Pembaur v. City of Cincinnati, 882 F.2d 1101, 1107 (6th Cir. 1989) (citing Fed.R.Civ.P. 8(c); Senter v. General Motors Corp., 532 F.2d 511 (6th Cir. [sic]), cert. denied, 429 U.S. 870, 97 S.Ct. 182 (1976); Wade v. Orange County Sheriff's Office, 844 F.2d 951 (2d Cir.1988)). However, Plaintiff's claim for defamation is a non-issue because the Honorable Nancy G. Edmunds dismissed the state law-based claim of defamation in an Order dated April 15, 2005. See [Docket Entry No. 2].

[68]Federal Defendants' Brief, Exhibit A at page 3; Plaintiff's Answer to Federal Defendants.

[69]Plaintiff's Answer to Federal Defendants at "page 3."

[70]Plaintiff's Complaint at "page 3."

[him] to plea [sic] guilty to all charges." Complaint at ¶ 22. *Plaintiff does not allege any mistreatment by federal defendants during this time period*.[71]

However, as noted above, Plaintiff *does* allege mistreatment during this time, specifically by Defendant Gross and Attorney General John Ashcroft.[72] Therefore, although the claims against the other Federal Defendants would be within the statute of limitations, the claims against Defendant Gross and Attorney General John Ashcroft would not be barred by same.[73]

### 3.   Federal Defendants' Remaining Defenses

Plaintiff's claims against the Federal Defendants should be dismissed under the analysis set forth in Part C, subparts 1 and 2, subsections a-c. Therefore, it is not necessary to address Federal Defendants' additional arguments regarding monetary damages, the Federal Tort Claims Act, the need to exhaust administrative remedies, insufficient service of process, and any other possibility of summary judgment in the alternative.

### D.   Defendant Erway

Defendant Erway argues that she is entitled to absolute immunity as a probation officer pursuant to Demoran v. Witt, 777 F.2d 1402 (9th Cir. 1985), and its progeny.[74] Particularly, Defendant Erway relies on Bennett v. Batchik, 743 F.Supp. 1245, 1251 (E.D. Mich. 1990).[75] The district court held "that defendant Dr. Jones [Director of Oakland County's probation department]

---

[71]Federal Defendants' Brief at page 9 (emphasis added).

[72]Plaintiff's Answer to Federal Defendants at "page 3." Plaintiff's Complaint at "page 3."

[73]Nevertheless, the claim against Defendants Gross and Ashcroft should be dismissed for the reasons already stated.

[74]Defendant Erway's Brief at pages 1-2.

[75]Again, the undersigned recognizes district judges are not bound by other district judges' decisions; however, same may be considered as persuasive authority. See cases cited supra note 28.

and/or his employee probation officers are absolutely immune from suit pursuant to 42 U.S.C. §

1983." Id. at 1251.   The district court went on to hold that "[i]n the alternative, this Court finds

those defendants are at least entitled to quasi-judicial immunity. The probation officer's only motive

was that of enforcing the judge's sentence." Id.

Plaintiff argues that Defendant Erway "is extremely racist and very anti-muslim,"[76] and a

"war criminal."[77]   Plaintiff states that Defendant Erway denied him permission to travel and

threatened him "by saying that they are going to send [him] to jail for a very long time."[78]   However,

Plaintiff presents no evidence that Defendant Erway's motive was anything other than enforcing

Plaintiff's sentence as in Bennett, 743 F.Supp. at 1251.  He also states that Defendant Erway

interrogated him and said that he "look[s] like a terrorist."[79]   However, there is no constitutional

right that protects against such comments.  Plaintiff alleges racial profiling, psychological torture,

or harassment.[80]  Plaintiff argues that police and FBI reports somehow show this,[81] but does not

explain further, nor does Plaintiff provide same to the court.  Such conclusory comments cannot

survive the Defendant's Motion to Dismiss.   "[C]onclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Mezibov v.

Allen,  411 F.3d 712, 716 (6th Cir. 2005) (citations omitted); see also Lillard, 76 F.3d at 726.

---

[76]Plaintiff's Complaint at "page 5."

[77]Plaintiff's Answer to Defendant Erway.

[78]Plaintiff's Answer to Defendant Erway.

[79]Plaintiff's Answer to Defendant Erway.

[80]Plaintiff's Answer to Defendant Erway.

[81]Plaintiff's Answer to Defendant Erway.

Although the undersigned is dealing with a pro se plaintiff and must construe the pleadings liberally, no set of facts has been presented which would set forth a viable claim.  Thus, Plaintiff has failed to state a claim against Defendant Erway.

## V.   **CONCLUSION**

For the reasons stated above, it is respectfully recommended that Defendants' Motions to Dismiss be **GRANTED**, consistent with this Report and Recommendation.

Pursuant to Fed. R.Civ.P 72(b) and 28 U.S.C. sec 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and filed specific, written objections within ten days after being served with a copy thereof.  The parties are further informed that failure to timely file objections may constitute a waiver of the further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F2d 947 (6th.Cir. 1981). In accordance with the provisions of Fed. R.Civ.P.6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

s/Wallace Capel, Jr.
**WALLACE CAPEL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**Dated:**   February 3, 2006

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on <u>February 3, 2006</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: <u>Felepe H. Hall, Michigan Dept. of Atty. Gen., P. O. Box 30736, Lansing, Michigan 48909, Diane M. Smith, Michigan Dept. of Atty. Gen., P. O. Box 30217, Lansing, Michigan 48909-7717, and Derri T. Thomas, U. S. Attorney's Office, 211 W. Fort Street, Suite 2001, Detroit, Michigan 48226</u>.

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): <u> Mohammed Adnan Bhutta, 162-10 87th Road, Jamaica, NY 11432, and Lorne L. Carignan, Flint City Law Department 1101 S. Saginaw Street, Room 307, Flint, Michigan 48502  </u>.

<u>s/James P. Peltier</u>
United States District Court
Flint, Michigan 48502
810-341-7850
E-mail: pete_peltier@mied.uscourts.gov

23